O

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| RICHARD R. LAWLESS,<br><br>       Plaintiff,<br><br>   v.<br><br>THE SECURITY & EXCHANGE<br>   COMMISSION,<br><br>       Defendant. | Case No. 5:21-cv-01637-JWH-SPx<br><br>**ORDER REGARDING:**<br>**PLAINTIFF'S MOTIONS FOR**<br>   **SANCTIONS [ECF. Nos. 105,**<br>   **115, &121],**<br>**PLAINTIFF'S MOTIONS TO**<br>   **DISMISS DEFENSE**<br>   **COUNSEL'S STATEMENTS**<br>   **[ECF Nos. 108 & 120],**<br>**PLAINTIFF'S MOTIONS**<br>   **REQUESTING RULINGS ON**<br>   **DEFENSE COUNSEL**<br>   **APPLICATIONS OF FOIA**<br>   **EXEMPTIONS [ECF Nos. 109 &**<br>   **118],**<br>**PLAINTIFF'S MOTIONS TO**<br>   **RELEASE UNREDACTED**<br>   **DOCUMENTS [ECF Nos. 110-**<br>   **114, 116, 117, & 119], AND**<br>**DEFENDANT'S MOTION FOR**<br>   **PARTIAL SUMMARY**<br>   **JUDGMENT [ECF No. 129]** |

# I.  SUMMARY OF DECISION

Before the Court are 16 motions, all of which arise out of several Freedom of Information Act ("FOIA") requests filed by *pro se* Plaintiff Richard Lawless.  Lawless has filed 15 motions or amendments thereto, and Defendant Securities and Exchange Commission has moved for partial summary judgment.[1]

Each motion falls into one of three categories.  First are the motions for sanctions, of which Lawless files three versions.[2]  Second, Lawless filed a self-styled motion (and amended motion) to deem the statements of the SEC's counsel of record, attorney Alexandra Verdi, as unreliable.[3]  And third, 11 motions concern the merits of the SEC's decision to withhold or redact certain documents pertinent to Lawless's FOIA requests.[4]

---

[1]     *See* Notice of SEC's Mot. for Partial Summ. J. (the "Motion for Partial Summary Judgment") [ECF No. 129]; *see also* Def. SEC's Mem. of P. & A. in Supp. of the Motion for Partial Summary Judgment (the "Memorandum") [ECF No. 129-1].

[2]     Pl.'s Mot. Requesting Ct. Sanctions for Defense Counsel's Perjury, FOIA Violations, Misleading Statements (the "First Motion for Sanctions") [ECF No. 105]; Pl.'s Mot. Requesting Ct. Sanctions for Defense Counsel's Perjury, FOIA Violations, Misleading Statements (the "Second Motion for Sanctions") [ECF No. 115]; Am. Pl.'s Mot. Requesting Court Sanctions for Defense Counsel's Perjury, FOIA Violations, Misleading Statements (the "Third Motion for Sanctions") [ECF No. 121].

[3]     Pl.'s Mot. to Dismiss Def. Counsel Statements and Testimony (the "Motion to Dismiss Statements as Unreliable") [ECF No. 108]; Am. Pl.'s Mot. to Dismiss Def. Counsel Statements and Testimony (the "Amended Motion to Dismiss Statements as Unreliable") [ECF No. 120].

[4]     Those 11 motions are as follows:

- Motion for Partial Summary Judgment;
- Mot. Requesting Ct. Rulings on Def. Counsel Appl. of FOIA Exemptions (the "First Motion on FOIA Exemptions") [ECF No. 109];
- Am. Mot. Requesting Ct. Rulings on Def. Counsel Appl. of FOIA Exemptions (the "Second Motion on FOIA Exemptions") [ECF No. 118];
- Pl.'s Mot. Requesting a Ct. Order to Have the SEC Release Unredacted Documents on FOIA Req. 22-0001-OIGP (the "First 22-0001-OIGP Motion") [ECF No. 114];
- Am. Pl.'s Mot. Requesting a Ct. Order to Have the SEC Release Unredacted Documents on FOIA Req. 22-0001-OIGP (the "Second 22-0001-OIGP Motion") [ECF No. 119];
- Pl.'s Mot. Requesting a Ct. Order to Have the SEC Release Unredacted Documents on FOIA Req. 22-00015-FOPA (the "First 22-00015-FOPA Motion") [ECF No. 110];
- Pl.'s Mot. Requesting a Ct. Order to Have the SEC Release Unredacted Documents on FOIA Req. 22-00015-FOPA (the "Second 22-00015-FOPA Motion") [ECF No. 113];
- Am. (LR 7.3) Pl.'s Mot. Requesting a Ct. Order to Have the SEC Release Unredacted Documents on FOIA Req. 22-00015-FOPA (the "Third 22-00015-FOPA Motion") [ECF No. 116];

The Court finds all of those matters appropriate for resolution without a hearing. *See* Fed. R. Civ. P. 78; L.R. 7-15. After carefully examining the record and considering the papers filed in support and in opposition, the Court orders that each of Lawless's motions is **DENIED** and that the SEC's Motion for Partial Summary Judgment is **GRANTED**.

## II.  BACKGROUND

At its core, this case narrowly concerns five FOIA requests that Lawless filed with the SEC.[5] Those requests are numbered as follows:

- 21-00159-FOPA, which asked the SEC for "[a]ll internal communications regarding Richard R. Lawless" between July 30, 2015, and April 30, 2021;[6]
- 22-00001-OIGP, which the parties clarified would cover "all emails from Carl Hoecker to which SEC or Department of Justice ('DOJ') personnel responded that contain the search terms 'Richard Lawless,' 'Lawless,' or 'Richard R. Lawless' between January 1, 2017 and October 22, 2021";[7]
- 22-00015-FOPA, which asked for "copies of all Gary Gensler emails with responses and forwards regarding discussions about Richard Lawless or that include the names 'Richard Lawless', 'Lawless' or 'Richard R. Lawless' between April 17, 2021 and October 22, 2021";[8]
- 22-00016-FOPA, which asked for "copies of all Sue Curtin emails regarding Richard Lawless or that include the names 'Richard Lawless', 'Lawless' or 'Richard R. Lawless' with all forwards and responses between July 15, 2015 and October 30th, 2015";[9] and,

---

- Pl.'s Mot. Requesting a Ct. Order to Have the SEC Release Unredacted Documents on FOIA Req. 22-00016-FOPA (the "First 22-00016-FOPA Motion") [ECF No. 112] (docketed out of order);

- Am. Pl.'s Mot. Requesting a Ct. Order to Have the SEC Release Unredacted Documents on FOIA Request 22-00016-FOP (the "Second 22-00016-FOPA Motion") [ECF No. 111] (docketed out of order); and

- Am. Pl.'s Mot. Requesting a Ct. Order to Have the SEC Release Unredacted Documents on FOIA Req. 22-0016-FOPA (the "Third 22-00016-FOPA Motion") [ECF No. 117].

[5]      Compl. (the "Complaint") [ECF No. 1] 4; Suppl. Pleading (the "Supplemental Complaint") [ECF No. 83] 1.

[6]      Complaint 4.

[7]      Joint Statement of Undisputed Facts and Genuine Disputes (the "Joint Statement") [ECF No. 129-2] ¶ 15.

[8]      *Id.* at ¶ 2.

[9]      *Id.* at ¶ 3.

- 22-00017-FOPA, which concerns emails referencing Richard Lawless.[10]

Of those five FOIA requests, two of them—FOIA Request Nos. 21-00159-FOPA and 22-00017-FOPA—are currently pending in the SEC's complex track and have not been processed.[11]  Documents pertaining to the remaining three FOIA requests have been processed and have been released to Lawless or withheld to some degree—some documents were released in full, some with redactions, and some were withheld entirely.[12]  In September 2022, the Court directed the SEC to produce to the Court all of the documents related to the three completed FOIA requests, fully unredacted, for an *in camera* review.

Although the focus of this lawsuit now shifts to evaluating the propriety of the SEC's decision to redact or withhold certain documents, additional context is necessary to explain the bevy of motions before the Court.

Motivating Lawless's FOIA requests is his firmly held belief in an extensive criminal conspiracy behind the Puerto Rico debt crisis.[13]  Lawless, the former CEO of a corporation called Commercial Solar Power, Inc. and a self-described muckraker, allegedly lost several tens of millions of dollars of investments when the Puerto Rico Electric Power Authority defaulted on its loans.[14]  Lawless repeated *ad nauseum* in his various filings accusations that the SEC failed to investigate fully or properly the criminal misconduct behind the crisis, including allegations of an alleged coverup.[15]  Wall Street

---

[10]     *See generally* Supplemental Complaint.

[11]     Joint Statement ¶ 6.

[12]     *See, e.g.*, *id.* at ¶¶ 10, 14, 20, 23, 25, 26, 30, 31, & 34.

[13]     *See, e.g.*, Complaint 2-5.  While the Court is aware of the Puerto Rican debt crisis and the existence of various lawsuits arising out of it, the Court summarizes Lawless's allegations here for the convenience of the reader without any consideration of their veracity.

[14]     *See, e.g.*, *id.* at 3 & 6; Joint Rule 26(f) Report [ECF No. 78] 2:5-7 & 6:12-17; Third Motion for Sanctions; Pl.'s Evid. Exs. Supporting SUF Filed January 5, 2022 Evidence Ex. 6 [ECF No. 44] 1; Pl.'s Evid. Exs. Supporting SUF Filed January 5, 2022 Evidence Ex. 13 [ECF No. 51] (which includes excerpts of an asset purchase agreement between Lawless's company and a non-party for a solar farm); Pl.'s Evid. Exs. Supporting SUF Filed January 5, 2022 Evidence Ex. 15 [ECF No. 54] (where his emails to SEC officials describe his personal financial losses).

[15]     *See generally* Complaint; Pl.'s Response to Def.'s "Mem. Of Law" [ECF No. 37]; Pl.'s Evid. Exs. Supporting SUF Filed January 5, 2022 Evid. Ex. 3 [ECF No. 41]; Pl.'s Evid. Exs Supporting SUF Filed January 5, 2022 Evid. Ex. 16 [ECF No. 55]; Third 22-00016-FOPA Motion; Third Motion for Sanctions; Amended Motion to Dismiss Statements; Pl.'s Ex Parte Mot. to Immediately Address the SEC's and Ct. Violations of Pl.'s Whistleblower Protections and Civil Rights (the "Application") [ECF No. 131]; Pl.'s Response to the Motion for Partial Summary Judgment (the "Opposition") [ECF No. 132] (arguing that SEC officials were rewarded with plum jobs as a result of their participation in covering up the bond default).

banks supposedly colluded with various U.S. senators and SEC officials to hide invidious and felonious corruption, through which the banks made campaign contributions to politicians in exchange for protection from investigation and prosecution.  That alleged *quid pro quo* allowed banks and other Wall Street firms like Moody's to fix credit ratings and prices on municipal bonds, luring unsuspecting creditors like Lawless.[16]

Penniless,[17] Lawless now points the finger at a litany of public officials, ranging from U.S. Senate Majority Leader Chuck Schumer to former SEC Chairman Jay Clayton and current Chairman Gary Gensler.[18]  At one point, Lawless even included the undersigned judge in his ever-growing list of conspirators, filing an unsuccessful motion for recusal.[19]

The Court takes no position on Lawless's beliefs and harbors no ill will against him, notwithstanding his *ad hominem* attacks.  It may turn out that Lawless was right all along about a vast criminal conspiracy involving untold numbers of highly scrutinized public officials.  But that topic is, ultimately, peripheral to the matter before the Court, much to Lawless's chagrin.  The Court gathers that the narrow focus and rigorous procedures of litigation in federal court has, at times, vexed Lawless's broader goals of putting the SEC on trial and rooting out what he sees as endemic corruption.  Indeed, throughout the litigation, Lawless has vocalized his frustration with the Court, his opposing counsel, and the legal process.[20]  The Court further surmises that Lawless's unfamiliarity with the Federal Rules of Civil Procedure and this Court's Local Rules may have contributed to his procedural missteps and subsequent frustration.[21]  Nonetheless,

---

[16]     *See, e.g.*, Pl.'s Evid. Exs Supporting SUF Filed January 5, 2022, Evid. Ex. 7 [ECF No. 45] 2-8.

[17]     Lawless requested to proceed *in forma pauperis*.  *See* Request [ECF No. 3].  That request was granted.  *See* Order Granting Request to Proceed *in Forma Pauperis* [ECF No. 11].

[18]     Pl.'s Evid. Exs. Supporting SUF Filed January 5, 2022, Evid. Ex. 11 [ECF No. 49] 6 (claiming that he can prove that 68 U.S. Senators took bribes in relation to the alleged bond fraud).

[19]     *See* Mot. to Have Judge Holcomb Recuse Himself From this Case [ECF No. 93] 2 (asserting that the judge of this Court "sold [his] soul to the swamp," albeit conceding that Lawless lacked "any proof").  That motion for recusal was denied after independent review by another federal judge.  *See* Min. Order Den. Pl.'s Mot. to Disqualify Judge John W. Holcomb [ECF No. 95].

[20]     *See generally* Third Motion for Sanctions; Amended Motion to Dismiss Statements; Pl.'s Response to *Ex Parte* Appl. for Briefing Schedule and Modifications of Civil Trial Scheduling Order (the "Response") [ECF No. 124] (protesting a run-of-the-mill modification to the briefing schedule as a "clear abuse of the legal system").

[21]     *See, e.g.*, Min. Order of Video Hr'g Re: Pl.'s Mot. for Summ. J; Def.'s Mot. for Continuance of Hr'g; & Pl.'s Mot. of Modified Req. for Summ. J. [ECF No. 58] (ruling from the bench and denying Lawless's motion for summary judgment for failure to satisfy Rule 56(a) of

despite the Court's multiple attempts to communicate the importance of heeding those rules (or, alternatively, of availing himself of counsel), Lawless continues to impugn the integrity of the Court, viewing procedural denials of his motions as evidence of overt favoritism toward the SEC.[22]

As an overview of this order, the Court will first adjudicate Lawless's motions for sanctions.  Then it will address his motions to dismiss the statements of the SEC and Ms. Verdi as unreliable.  Finally, the Court will decide the SEC's Motion for Partial Summary Judgment and Lawless's 10 related motions, which cover the three processed FOIA requests.

## III.  MOTIONS FOR SANCTIONS

### A.  Procedural History

In May 2022, Lawless filed his First Motion for Sanctions against Ms. Verdi, the SEC's attorney, for alleged perjury and other misleading statements.[23]  Lawless then filed a Second Motion for Sanctions the next month, which was largely duplicative of the first.[24]  Twelve days after that, he filed his third iteration of that motion.[25]  Because "an amended Motion supersedes the original Motion," the Court treats the treats the first two motions as "nonexistent."  *Schoenfeld v. Marshall*, 2014 WL 11881036, at *1 (C.D. Cal. Oct. 9, 2014) (internal quotations and citations omitted).  Accordingly, the Court **DENIES** the First and Second Motions for Sanctions **as moot**.  The Court now considers only Lawless's Third Motion for Sanctions, which the SEC opposes.[26]

---

the Federal Rules of Civil Procedure); Order Den. Pl.'s Application [ECF No. 166] (denying Lawless's *ex parte* application in large part for violating the Federal and Local Rules).

[22]    *See, e.g.*, Application 3 (insinuating that the Court's scheduling changes are politically motivated); Amended Motion to Dismiss Statements 4:11-22 (claiming that the Court favors Defendants and seeks to protect them).  Ironically, for all the fuss Lawless makes about the SEC providing allegedly false statements, he utters a verifiably false statement in his brief when he complains that the Court "cancel[ed] all hearings."  *Id*. at 4:16.  The Court respectfully reminds Lawless that it has held numerous hearings in this matter where he has appeared before the Court.

[23]    *See generally* First Motion for Sanctions.

[24]    *See generally* Second Motion for Sanctions.

[25]    *See generally* Third Motion for Sanctions.

[26]    Def. SEC's Mem. of Law in Opp'n to Pl.'s Mots. (ECF Nos. 105, 109, 115, 120, 121) (the "Opposition to Motion for Sanctions") [ECF No. 135].

## B.   Legal Standard

Although Lawless does not invoke any statute or Federal Rule of Civil Procedure, the Court construes Lawless's Third Motion for Sanctions as arising under Rule 11, insofar as he fixates on the veracity of statements contained in the SEC's Answer.[27]  *See* Fed. R. Civ. P. 11(b).  Rule 11 requires an attorney to certify "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that "the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information." Fed. R. Civ. P. 11(b)(4).  The Ninth Circuit applies an objective test to determine whether Rule 11 has been violated; a violation of the Rule does not require subjective bad faith.  *See Yagman v. Republic Ins.*, 987 F.2d 622, 628 (9th Cir. 1993).

Additionally, the Court retains the ability to sanction attorneys for bad faith conduct, which may extend beyond deceptiveness and which enables the Court to punish attorneys when they engage in gamesmanship or even make meritorious arguments for improper purposes.  *See Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001); *see also Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 765 (1980) (discussing willful abuse of judicial process).  Unlike Rule 11 remedies, sanctions arising under the Court's inherent ability ***do*** require a finding of intent and a specific finding of bad faith.  *See Fink*, 239 F.3d at 992.

## C.   Analysis

Lawless accuses the SEC and Ms. Verdi of committing perjury with respect to 15 statements contained in the SEC's Answer.[28]  Despite the vociferousness with which Lawless makes his accusations, the Third Motion for Sanctions warrants denial for both procedural and substantive reasons.

### 1.   Procedural Defects

A Rule 11 motion must "state with particularity the grounds for seeking the order," Fed. R. Civ. P. 7(b)(1)(B), as well as "state the relief sought," Fed. R. Civ. P. 7(b)(1)(C).  Lawless fails to do either.

---

[27]     *See generally* Def. SEC's Answer (the "Answer") [ECF No. 29].  Additionally, the Court observes that sanctions for the purpose of enforcing discovery is inapposite because the Answer is a pleading, not a discovery document. *See, e.g.*, Fed. R. Civ. P. 37.  Sanctions for the purpose of deterring unreasonable and vexatious litigation is similarly inapt, since the SEC is defending this action and is rule-bound to file an answer.  *Cf.* 28 U.S.C. § 1927; *see also* Fed. R. Civ. P. 12(a)(2) (requiring a federal agency to serve an answer to a complaint within 60 days).

[28]     Third Motion for Sanctions 3-9.

First, Lawless does not specify the grounds for his motion.[29]  While the Court avails itself of Rule 11 as a framework to adjudicate Lawless's motion, that construction does not relieve Lawless of **his** duty to ground his motion in a legal rule or doctrine and then state it with particularity.  Simply throwing the word "perjury" around—however intuitive—is insufficient for the purposes of motion practice.[30]  *See Cartessa Aesthetics LLC v. Aesthetics Biomedical Inc.*, 2020 WL 1952567, at *2 (D. Ariz. Apr. 23, 2020) (collecting cases) (denying a motion where the movant "has not even attempted to identify a legal rule or doctrine that would empower a court to address this circumstance").  Lawless does not invoke a single statute, regulation, or rule as the basis for his Third Motion for Sanctions.[31]  The Court will not do it for him, *pro se* or not.[32]

With respect to articulating the relief sought, Lawless's Third Motion for Sanctions fares little better.  The caption mentions sanctions, but Lawless never says what kind.  The only elucidation comes from the penultimate line in Lawless's brief, where he "prays the court will hold the Defendant and Defense Counsel to the same standards as any hardworking Americans would be held to."[33]  The meaning of that request is abstruse.[34]  Neither the Court, nor the SEC, nor Ms. Verdi should have to decipher its meaning.  *See Asberry v. Relevante*, 2019 WL 3986358, at *2 (E.D. Cal. Aug. 23, 2019), *report and recommendation adopted*, 2019 WL 4302243 (E.D. Cal. Sept. 11,

---

[29]    *See generally id.*

[30]    *See, e.g., id.* at 3.

[31]    Lawless mentions the FOIA, *see, e.g., id.* at 9, but it is not clear that he was invoking FOIA as the grounds for a motion for sanctions, or, even if he was, he did not cite a specific provision of the FOIA (or a related regulation) to support his Third Motion for Sanctions.

[32]    Assuming that Lawless meant to invoke Rule 11, then his Third Motion for Sanctions would be procedurally defective for yet **another** reason.  Any motion for sanctions under Rule 11 "must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."  Fed. R. Civ. P. 11(c)(2).  The Third Motion for Sanctions was docketed on June 20, but Lawless says that he served it on Ms. Verdi on June 8.  *See* Third Motion for Sanctions 9.  If so, the Third Motion for Sanctions would have violated the "safe harbor" provision of Rule 11(c), which courts in this circuit enforce "strictly."  *Holgate v. Baldwin*, 425 F.3d 671, 678 (9th Cir. 2005).

[33]    Third Motion for Sanctions 9.

[34]    To the extent that Lawless asks merely for equal treatment under the law, then the Court is unsure how to proceed any differently than it has throughout the course of this litigation.  The Court reminds Lawless that it is bound to apply the law to the facts faithfully, while aspiring to ensure a "just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1.  Fulfilling that obligation requires faithful observance to the rules—rules that Lawless routinely ignores to his own detriment.

2019) (denying a motion, filed as a letter to the court, where it did not identify the remedy sought). For those reasons alone, Lawless's Third Motion for Sanctions is denied.

### 2. Substantive Defects

In addition, the Court concludes that Lawless's accusations do not overcome the high bar for a Rule 11 motion or for sanctions pursuant to the Court's inherent powers. *See In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 437 (9th Cir. 1996) (explaining that sanctions pursuant to Rule 11, 28 U.S.C. § 1927, or even the court's inherent powers are "extraordinary" remedies to be exercised with "extreme caution") (citing *Operating Eng'rs Pension Trust v. A–C Company*, 859 F.2d 1336, 1345 (9th Cir. 1988)). In short, there are four reasons to deny the Third Motion for Sanctions on the merits.

First, Lawless mischaracterizes several of the SEC's statements.[35] For instance, Lawless says that the SEC "denies knowledge of the 'RICO Lawsuit' filed on behalf of Puerto Rico residents."[36] But the SEC alleged that it lacked "knowledge or information ***sufficient*** to form a belief about the truth of the remaining allegations in this paragraph," which had more to do with Lawless's editorializing of Puerto Rican's sentiments.[37] The Court cannot penalize Ms. Verdi based upon Lawless's misunderstanding or a strawman argument.

Second, many of the SEC's denials in its pleading are not susceptible to accusations of perjury.[38] For example, Lawless takes umbrage with the SEC for declining "to address Plaintiff's allegation that he was 'the first and only SEC whistleblower on this matter.'"[39] But declining to address an allegation is not the same as denying its truth. Indeed, the SEC explained that it did so as a matter of law to protect the identity (or identities) of other possible whistleblowers.[40] Lawless also appears to be wounded by the SEC's lack of information or belief about his self-aggrandizing claim that he is an "accomplished journalist."[41] Again, it is hard to label the SEC's pleading perjurious

---

[35] This issue occurs with his first, third, sixth, ninth, and thirteenth accusations. *Compare* Third Motion for Sanctions 3-6 *with* Answer 2:12-6:10.

[36] Third Motion for Sanctions 4.

[37] Answer 3:3-10 (emphasis added); *see also* Opposition to the Motion for Sanctions 4:22-28.

[38] This issue applies to Lawless's second (subjective belief), seventh, ninth (conclusion of law), tenth, and thirteenth (subjective belief) accusations. *See* Third Motion for Sanctions 3-6.

[39] *Id.* at 6.

[40] *See* Answer 4:1-11 (admitting that Lawless submitted a "a Tip, Complaint, and Referral (TCR) to the SEC's Office of the Whistleblower" but declining to address whether he was the first or only person to do so, pursuant to 15 U.S.C. § 78u–6(h)(2)).

[41] *Compare* Answer 5:2-3 *with* Third Motion for Sanctions 7.

when the quality of being "accomplished" at something (or not) is a matter of subjective opinion.[42]

Third, many of Lawless's accusations presume an unreasonable amount of inquiry. For example, Lawless accuses Ms. Verdi of perjury for denying his allegation regarding the SEC's role in a "Mafia style government run criminal operation"[43] and his allegation about working with the SEC and the Department of Justice for six years to investigate that alleged conspiracy.[44]  In both instances, Lawless says that the truth behind his allegations would have been apparent from the thousands (or hundreds of thousands) of pages of documents identified as potentially responsive to his FOIA requests.[45]  While Rule 11 provides that attorneys may deny allegations only after making an "an inquiry reasonable under the circumstances," Fed. R. Civ. P. 11(b), Lawless asks for too much here.  Neither the SEC nor Ms. Verdi is omniscient, let alone omnipotent.  Assuming that a staff attorney requires one hour to review 50 pages of documents,[46] it would have taken 20,000 hours for Ms. Verdi to have reviewed the "one million pages of documents" that Lawless claims are potentially relevant to his allegations.[47]  But given that the SEC's Answer was due 60 days after Lawless served his Complaint, *see* Fed. R. Civ. P. 12(a)(2), Ms. Verdi would have had only 1,440 hours to review any documents, assuming that she reviewed them 24/7 for two months straight.  Expecting that amount of effort in a preliminary inquiry is beyond the pale.  Even if some (or all) of Lawless's theories and accusations later prove true, such a development would not necessarily render Ms. Verdi's inquiry *ipso fact* unreasonable and thereby worthy of sanctions:  "Rule 11 should not impose the risk of sanctions in the event that the court later decides that the lawyer was wrong." *Hurd v. Ralphs Grocery Co.*, 824 F.2d 806, 810 (9th Cir. 1987) (quoting *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1537 (9th Cir. 1986)).  Sanctions are

---

[42]    If Lawless had won a Pulitzer, then the Court would ***still*** be obliged to deny the Third Motion for Sanctions on the merits, since reasonable people can disagree about what counts as accomplished.

[43]    Answer 2:8.

[44]    *Id.* at 2:9-11.  For this particular denial, the Court sees an additional reason to reject Lawless's accusation on the merits under Rule 11(b)(4).  Even though some of the released FOIA documents include email exchanges between Lawless and SEC attorney Sue Curtin regarding his whistleblower complaint, that (largely one-sided) exchange hardly rises to the level of a working relationship, let alone one that lasted six years.  Based upon the evidence presented thus far, the SEC could reasonably disagree with Lawless's portrayal in its Answer.

[45]    Third Motion for Sanctions 3 & 4.

[46]    *See, e.g.*, Related Case Information Evid. Ex. Three from Case No. 5:21-cv-02174-JWH-SPx ("Exhibit Three") [ECF No. 102] 5 (containing a letter to Lawless from a FOIA Research Specialist at the SEC, stating that the length of time it takes for one staff attorney to review documents is 50 pages per hour).

[47]    Third Motion for Sanctions 3.

merited only if the attorney has failed to conduct "a reasonable and competent inquiry" before signing and filing a pleading. *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002). Under the totality of circumstances, nothing about Ms. Verdi's inquiry appears unreasonable. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 401–02 (1990) (advising courts to take all circumstances into account, including limitations on time).

Fourth, and perhaps most damaging to his claims, Lawless does not include with his moving papers a single one of those documents or emails that apparently corroborate his accusations.[48] At most, Lawless references a separate 86-page document that he filed concurrently with his First Motion for Sanctions.[49] That document includes letters from the SEC regarding his FOIA requests, email correspondences with Ms. Verdi and Mark Tallarico (another attorney with the SEC) concerning his lawsuit and payment of FOIA-related fees, screenshots of online news headlines (mostly his own writings),[50] and a letter from the SEC to non-party William Venema regarding a FOIA request similar to one of Lawless's own. Nowhere in that document is, for example, a copy of the PowerPoint presentation that Lawless references, which, he professes, was produced in collaboration with the SEC and DOJ and details the "felonies that led to the Puerto Rico bond default."[51] And nowhere is there, say, a transcript of supposed telephone conversations of officials accepting those bribes, which Lawless says were recorded by the Central Intelligence Agency.[52]

While Lawless appears convinced that his correspondence with the SEC offers compelling circumstantial evidence to confirm his theory,[53] an *in camera* review of the documents released thus far demonstrates that his suspicions are unfounded. Nothing in

---

[48]    *See generally* Third Motion for Sanctions (attaching no exhibits). Here, the Court must remind Lawless that it is not incumbent on the Court to sift through every document on the docket and do the work of counsel. *See Christian Legal Soc. v. Wu*, 626 F.3d 483, 488 (9th Cir. 2010) ("Judges are not like pigs, hunting for truffles buried in briefs." (quoting *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam)) (alteration omitted))).

[49]    *See* Third Motion for Sanctions 8 (referencing Exhibit Three).

[50]    A close examination of those blogposts reveals that not all of them were written by Plaintiff. For example, some were written by a Richard P. Lawless, a former Deputy Undersecretary of Defense. *See* Exhibit Three 79.

[51]    Complaint 3.

[52]    *Compare id.* at 3 & 4 *with* Exhibit Three; *see also* Third Motion for Sanctions 4 & 5.

[53]    Namely, Lawless believes that the large number of potentially responsive documents is proof of the criminal conspiracy that he seeks to uncover. But the Court cannot credit that logical leap. As the Court has pointed out before, it is not surprising that a federal enforcement agency may have lots of documents with the word "lawless" in the text. But those references may be referring to lawlessness, not to Lawless himself. A potentially responsive document is not the same as an ***actually*** responsive document.

the released FOIA documents supports his version of events.  As Gertrude Stein once remarked, there is no "there" there.  *See United States v. Menendez*, 291 F. Supp. 3d 606, 633 (D.N.J. 2018) (citing Gertrude Stein, *Everybody's Autobiography* (1937)).  As one may expect from the search terms that Lawless provided, the vast majority of the documents correspond to a slew of emails sent by Lawless himself to various SEC staffers.  The rest of the emails are unremarkable, anodyne interoffice exchanges discussing how to reply to him or notes memorializing their conversations.[54]

Common sense would suggest that, if, after three of the five FOIA requests have been released, and not one document shows a smoking gun, then perhaps no smoking gun exists.  Of course, logic dictates that is impossible to disprove a negative.  But the Court can look at only the best available evidence, and, so far, the evidence overwhelmingly supports the SEC's position.  At the very minimum, the Court is in no position to penalize Ms. Verdi for denying Lawless's allegations when Lawless himself cannot adduce the key admissible evidence.  *See, e.g.*, Fed. R. Evid. 901(a).  Under Rule 11 or the Court's inherent authority, the Third Motion for Sanctions wholly lacks merit.  It is therefore **DENIED**.

## IV.  MOTIONS TO DISMISS STATEMENTS AS UNRELIABLE

Lawless's original Motion to Dismiss Statements was docketed in June 2022. That motion is **DENIED as moot** since Lawless filed an Amended Motion to Dismiss Statements 10 days later.  *See Schoenfeld*, 2014 WL 11881036, at *1.

Here, Lawless asks the Court to "recognize that anything claimed or stated by the Defendant and Defense Counsel should be considered suspect and unreliable, motivating the Court to require documentary and testimonial support for all SEC claims."[55] Rehashing many of the same accusations set forth in his Third Motion for Sanctions,[56] Lawless doubles down on matters entirely peripheral to the litigation, taking issue with out-of-court statements that Ms. Verdi allegedly made in the parties' various meetings and correspondence.[57]

---

[54]    The one exception is an email thread in which SEC staffers discuss how to handle and respond to external reports about an unknown person sending out emails while pretending to be an SEC official.  *See* Joint Statement ¶ 31.

[55]    Amended Motion to Dismiss Statements 3:14-18.

[56]    *Compare id.* at 8:17-13:30 *with* Third Motion for Sanctions 3-8.

[57]    *See, e.g.*, Amended Motion to Dismiss Statements 2:15-23, 3:10-24, & 4:34-5:15.

But, like the Third Motion for Sanctions, the Amended Motion to Dismiss Statements is procedurally defective and substantively lacking in merit. Lawless again fails to identify any grounds for the relief that he seeks. *See* Fed. R. Civ. P. 7(b)(1)(B). Lawless cites no Federal Rule of Civil Procedure, no Federal Rule of Evidence, no statute, no regulation, and no judicial doctrine to support his motion.[58] He relies entirely on his firmly held belief in a vast and wide-ranging criminal conspiracy, which—true or not—bears little relevance to the question before this Court: *i.e.*, whether Lawless is entitled as a matter of law to receive documents pertinent to his FOIA requests that the SEC redacted or withheld. Furthermore, as previously discussed, *see supra* Part III.C.2., the Court is unconvinced by Lawless's accusations that Ms. Verdi committed perjury. Those charges are plagued by a lack of evidence, by Lawless's own mischaracterizations of Ms. Verdi's statements, and by Lawless's reliance on largely self-referential and unverified writings.

The additional "Indirect Evidence" that Lawless appends to this motion does not help his cause.[59] All of it is irrelevant to the claims that Lawless pursues under the FOIA. Mostly it describes the landing spots of former SEC officials in various law firms or investment firms; it provides some hyperlinks to those law firms' practice pages and to political transparency advocacy groups' blog posts.[60] Whether those former officials' private sector gigs generate "conflicts of interest" does not bear on the questions raised in this lawsuit. Moreover, how or why any of those materials impugn Ms. Verdi's veracity, in particular, is puzzling.[61] Therefore, even if the statements contained in the "Indirect Evidence" are true, they are all inadmissible because they are irrelevant to this action. *See* Fed. R. Evid. 401(b).

Furthermore, much of the Indirect Evidence contains inadmissible hearsay or unreliable documents lacking foundation, such as links to a Wikipedia article or Lawless's own book. *See* Fed. R. Evid. 802 & 901(a); *see also Hasbro, Inc. v. Sweetpea Ent., Inc.*, 2014 WL 12580250, at *3 (C.D. Cal. Feb. 25, 2014) (expressing concerns regarding the reliability of anonymously authored Wikipedia articles); *Specter v. Texas Turbine Conversions, Inc.*, 505 F. Supp. 3d 936, 954 (D. Alaska 2020) ("Wikipedia is a suspect authority, unreliable, and has been treated as such by numerous courts") (collecting cases).

---

[58]    *See generally id.*

[59]    *See id.* at 13:32.

[60]    *See, e.g., id.* at 14:1-17:16.

[61]    *Id.* at 17:15.

Most importantly, none of the "Indirect Evidence" is at all probative.  At best, the "Indirect Evidence" shines a light on the revolving door through which former SEC officials pass into companies that they once regulated.  But the existence of a revolving door is not evidence of a ***particular*** conspiracy.  It is equally consistent with a world in which a grand Puerto Rican bond conspiracy exists ***and*** a world in which it does not.  Former regulators routinely take private sector jobs in the industries that they once oversaw.[62]  And even though the revolving door is a legitimate public concern, the fact that it is so routine and so pervasive makes it that much less probative of any given conspiracy.  In other words, because the evidence does not tend to make either scenario more likely than the other, it necessarily fails the test for admissibility.  *See* Fed. R. Evid. 401(a).

To borrow another phrase, extraordinary claims require extraordinary evidence.[63] *See, e.g.*, *Savage v. Warden, Pickaway Corr. Inst.*, 2022 WL 4357465, at *14 (S.D. Ohio Sept. 20, 2022) ("To borrow a line from Carl Sagan, extraordinary claims require extraordinary evidence.")  Lawless's claims of a vast and nefarious conspiracy certainly qualify as extraordinary; regrettably, cursory references to Wikipedia, headlines, and his own book certainly do not.  For those reasons, the Amended Motion to Dismiss Statements is **DENIED**.

## V.  MOTION FOR PARTIAL SUMMARY JUDGMENT

### A.  Procedural History

In August 2022, the SEC moved for partial summary judgment on three of the five FOIA requests:  22-00015-FOPA, 22-00016-FOPA, and 22-00001-OIGP.[64]  That motion doubles as an opposition to Lawless's 10 motions asking for rulings on his FOIA requests and disputing the exemptions claimed by the SEC.[65]  Because those motions relate to specific FOIA requests, the Court construes them as cross-motions for summary judgment.  *See Elec. Frontier Found. v. Dep't of Com.*, 58 F. Supp. 3d 1008, 1010 (N.D. Cal.

---

[62]     *See, e.g.*, Cecilia Wang, Stop That Revolving Door:  Analysis of the Appropriate Application of the "Cooling-Off" Period Beyond Senior Government Employees, 15 Cardozo Pub. L. Pol'y & Ethics J. 297, 299 (2017).

[63]     The phrase is often attributed to Carl Sagan.

[64]     Memorandum 1:2-6.

[65]     Many of those motions are duplicative.  The Court considers only the four most recent amended motions—*i.e.*, the Second Motion on FOIA Exemptions, the Second 22-0001-OIGP Motion, the Third 22-00015-FOPA Motion, and the Third 22-00016-FOPA Motion (collectively, the "FOIA Cross-Motions")—and **DENIES** the remaining six **as moot**.  *See Schoenfeld*, 2014 WL 11881036, at *1.

2013), *vacated and remanded on other grounds by Elec. Frontier Found. v. U.S. Dep't of Com.*, 622 F. App'x 627 (9th Cir. 2015) (describing the filing of cross-motions as the "typical procedure for adjudicating FOIA actions").

Because Lawless called the credibility of the SEC's attestations into question,[66] the Court, in an abundance of caution, exercised its discretion to review the redacted and withheld documents *in camera. See, e.g.*, *Quinon v. F.B.I.*, 86 F.3d 1222, 1227–28 (D.C. Cir. 1996) (explaining that the district court possesses broad discretion under FOIA to conduct an *in camera* review); *see also NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978) (noting that "[t]he in camera review provision is discretionary by its terms").

After considering the unredacted versions of the documents, the papers filed in support, and the papers filed in opposition,[67] the Court orders that the SEC's Motion for Partial Summary Judgment is **GRANTED**, for the reasons set forth herein.

## B.   Legal Standard

Summary judgment (or partial summary judgment) is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). The substantive law determines the facts that are material. *See id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* Factual disputes that are "irrelevant or unnecessary" are not counted. *Id.*

Under that standard, the moving party has the initial burden of informing the court of the basis for its motion and identifying the portions of the pleadings and the record that it believes demonstrate the absence of an issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. *See id.* at 325. Instead, the moving party need only prove there is an absence of evidence to support the nonmoving party's

---

[66]   *See* Amended Motion to Dismiss Statements 3:28-4:4; *see also* Opposition 6 (asking the Court to review the unredacted documents).

[67]   The Court considered the documents of record in this action, including the following papers: (1) Complaint; (2) Supplemental Complaint; (3) FOIA Cross-Motions; (4) Motion for Partial Summary Judgment; (5) Memorandum; (6) Opposition; and (7) Def. SEC's Reply in Supp. of the Motion for Partial Summary Judgment (the "Reply") [ECF No. 137].

case. *See id.*; *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). The party seeking summary judgment must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson*, 477 U.S. at 250.

Furthermore, a party "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). "The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Advisory Committee Notes, 2010 Amendment, to Fed. R. Civ. P. 56. Reports and declarations in support of an opposition to summary judgment may be considered only if they comply with Fed. R. Civ. P. 56(c), which requires they "be made on personal knowledge, set forth facts that would be admissible evidence, and show affirmatively that the declarant is competent to testify to the matters stated therein." *Nadler v. Nature's Way Prod., LLC*, 2015 WL 12791504, at *1 (C.D. Cal. Jan. 30, 2015); *see also Loomis v. Cornish*, 836 F.3d 991, 996–97 (9th Cir. 2016) (noting that hearsay statements do not enter the analysis on a motion for summary judgment).

## C.    Analysis

The fundamental purpose of the FOIA is to assist citizens in discovering "what their government is up to." *United States Department of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989). The FOIA strongly favors openness. Congress recognized, in enacting the FOIA, that an informed citizenry is "vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).

Under the FOIA, an agency may withhold documents responsive to a FOIA request if the documents fall within one of nine enumerated statutory exemptions. *See* 5 U.S.C. § 552(b). However, those nine categories of exemptions are "limited," and they "must be narrowly construed." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976). The government agency ultimately bears the burden to prove that a redacted or withheld document falls within one of those exemptions. *See Dobronski v. FCC*, 17 F.3d 275, 277 (9th Cir. 1994).

Resolving FOIA disputes, therefore, generally requires a two-stage inquiry. First, the Court must determine whether the SEC conducted an adequate search as obliged by the FOIA. *See Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985). The SEC can satisfy that burden by demonstrating that it has conducted a search reasonably calculated to uncover all relevant documents related to the search. *Id.* The question is not whether any other relevant documents could possibly exist, but, rather, whether the SEC's search

for the documents was adequate, as measured by a reasonableness standard.  *See Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).

If that initial burden has been met, the second step of the inquiry examines whether the SEC has proven that the undisclosed information falls within one of the nine FOIA exemptions.  *See* 5 U.S.C. § 552(a)(4)(B); *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) ("The burden remains with the agency when it seeks to justify the redaction of identifying information in a particular document as well as when it seeks to withhold an entire document.").

### 1.    Adequacy of the Search

The SEC contends that it has conducted adequate searches in connection with FOIA Request Nos. 22-00015-FOPA, 22-00016-FOPA, and 22-00001-OIGP.[68]  The Court agrees.

It is undisputed that the SEC's Office of Information Technology searched for potentially responsive documents using the keywords that Lawless provided[69] and that SEC staff then reviewed those documents for responsive records.[70]  Lawless does not explicitly contest the adequacy of those searches in any of his FOIA Cross-Motions.[71]  At most, Lawless's Third 22-00015-FOPA Motion implicitly casts doubt on the adequacy of that particular search, rhetorically asking:

> Is it all plausible that Mr. Gensler never wrote an email referring to Mr. Lawless and the Puerto Rico bond issue?  . . .  Are we to believe the improbable here?  No emails between the SEC General Counsel and Gary Gensler, no emails between the DOJ and Gary Gensler (his defense counsel) referring to Richard Lawless or the bonds?[72]

The answer to that rhetorical question appears to be "yes."  No matter how sincere, Lawless's disbelief does not constitute a credible challenge to the adequacy of the SEC's search when he adduces no admissible evidence to contest the validity of the search methods or procedures.  *See, e.g.*, *Broemer v. Fed. Bureau of Investigation*, 2011 WL

---

[68]    Memorandum 8:3–10:2.

[69]    *See* Joint Statement ¶¶ 7, 12, 16, & 18.  Lawless makes some editorial remarks in response to those statements of fact, but he does not contradict them directly or otherwise object to their admissibility.

[70]    *Id.* at ¶¶ 9, 13, & 17.

[71]    *See generally* Opposition (making no reference to, or argument about, the adequacy of the SEC's searches); *see also* Reply 3:5-12 (observing the lack of rebuttal).

[72]    Third 22-00015-FOPA Motion 2 & 3.

13142587, at *9 (C.D. Cal. Apr. 22, 2011), *aff'd sub nom. Broemer v. F.B.I.*, 548 F. App'x 435 (9th Cir. 2013) (holding that the plaintiff's "belief that his interactions with the government were sufficiently substantial that the CIA ***must*** have records concerning him does not suffice to render the agency's search inadequate") (emphasis added); *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) (noting that "appellant provides no proof that these documents exist and his own conviction . . . that records ***must*** have been created is pure speculation" and further holding that "[s]uch hypothetical assertions are insufficient to raise a material question of fact with respect to the adequacy of the agency's search") (emphasis added).  Consequently, the Court finds no genuine dispute of material fact concerning the adequacy of the SEC's search for the records that Lawless requested.

### 2.    FOIA Exemptions

Next, the Court determines whether the SEC properly withheld or redacted certain documents pursuant to FOIA Exemptions 5, 6, and 7(C).  *See* 5 U.S.C. § 552(b).

### a.    Exemption 5

Exemption 5 of the FOIA allows agencies to redact or withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested."  5 U.S.C. § 552(b)(5).  Since none of the records that Lawless requests are more than 25 years old, the SEC may avail itself of this exemption so long as it is used to shield "those documents, and only those documents, normally privileged in the civil discovery context."  *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).  Those privileges include "the deliberative process privilege, attorney-client privilege, and attorney work-product privilege."  *United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021).

In this instance, the SEC invokes both the attorney work-product privilege and the deliberative process privilege for emails authored by staff in its Division of Enforcement and Office of the Inspector General.[73]  The SEC released 30 pages of documents related to FOIA Request No. 22-00001-OIGP and 128 pages of documents related FOIA Request

---

[73]    Memorandum 11:16-14:21.

No. 22-00016-FOPA, albeit with redactions.[74]  The SEC also withheld in full 21 pages of documents related to FOIA Request No. 22-00016-FOPA.[75]

As described in its *Vaughan* index,[76] the SEC averred that those documents included attorney work product, as well as pre-decisional deliberations on how to handle someone posing as an SEC staffer, how to respond to Lawless, and what to make of his whistleblower complaint and another non-party individual.[77]  Those descriptions are supported by affidavits provided under penalty of perjury.[78]

Having reviewed the documents *in camera*, the Court agrees with the SEC's descriptions and attestations.  Regarding FOIA Request No. 22-00001-OIGP, many of the emails really did concern how to deal with someone impersonating an SEC staffer.[79]  Those documents were properly withheld under Exemption 5 as a deliberative process privilege.  Additionally, the 21 pages withheld from FOIA Request No. 22-00016-FOPA were simply notes, taken by an SEC attorney, in anticipation of possible litigation at the time.[80]  Since those notes qualify as attorney work product, they squarely fall within the ambit of Exemption 5.  *See Jud. Watch, Inc. v. Dep't of Just.*, 432 F.3d 366, 370 (D.C. Cir. 2005).  As a matter of law, then, no FOIA requester would be entitled to those documents.

### b.  Exemptions 6 and 7(C)

The SEC also invokes Exemptions 6 and 7(C) for the purpose of redacting names, titles, telephone numbers, and email addresses of SEC staffers, as well as the personal information of a thirty party.[81]  Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Exemption 7(C) similarly protects "records or information compiled for law enforcement purposes, but only to the extent that the

---

[74]    Joint Statement ¶¶ 14 & 23.

[75]    *Id.* at ¶ 14.

[76]    *See generally Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

[77]    Joint Exhibit [ECF No. 129-4] 24-31; *see also* Joint Statement ¶¶ 25, 26, & 30.

[78]    Joint Exhibit 1-13.

[79]    The rest of the 22-00001-OIGP documents are inter-agency communications acknowledging the receipt of forwarded emails from Lawless.

[80]    Although 21 pages of notes sounds extensive, the reality is far more pedestrian.  Of the 21 pages withheld, only a few are unique.  The rest of the pages are merely carbon copies.  The Court hazards a guess that the notes were sent as an attachment in an email thread, which then had a back-and-forth.  Thus, the SEC's IT system logged the same few pages multiple times.

[81]    Joint Exhibit 26.

production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).

To determine whether Exemption 6 applies, a court must balance the harm to the individual whose privacy is breached against the public interest served by disclosure.  *See U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 496 (1994).  To do so, the Ninth Circuit applies a two-part balancing test.  *See Cameranesi v. U.S. Dep't of Def.*, 856 F.3d 626, 637 (9th Cir. 2017).  "First, we evaluate the personal privacy interest at stake to ensure that disclosure implicates a personal privacy interest that is nontrivial or . . . more than de minimis."  *Id.* (quotations and bracket omitted).  Second, if the agency shows that a nontrivial privacy interest is at stake, then "the requester must show that the public interest sought to be advanced is a significant one and that the information sought is likely to advance that interest."  *Id.* (quotations and bracket omitted).  "Otherwise, the invasion of privacy is unwarranted."  *Id.* (quotations omitted).

Here, the SEC released (with redactions) 47 pages of documents from FOIA Request No. 22-00001-OIGP consisting of email records from non-party Carl Hoecker and 106 pages of documents from FOIA Request No. 22-00015-FOPA sent to one of Chairman Gensler's public facing email addresses.[82]  Additionally, the SEC invoked Exemptions 6 and 7(C) as a reason for redacting some of the 128 pages of documents released in response to FOIA Request No. 22-00016-FOPA.[83]

As described in the *Vaughan* index, the redacted information pertains to SEC staff information and the personal information of a non-party in the context of an investigation.  Having reviewed the underacted documents, the Court can confirm that the SEC's description is accurate.  The Court is persuaded that a release of that information would create a "a palpable threat to privacy."  *Carter v. U.S. Dep't of Com.*, 830 F.2d 388, 391 (D.C. Cir. 1987).  Lawless conceded that point as well.[84]

Turning to the second prong, the Court finds that releasing the personally identifiable information of SEC staffers and a non-party does not serve the public interest.  *Cf. Forest Serv. Emps. for Env't Ethics v. U.S. Forest Serv.*, 524 F.3d 1021, 1027 (9th Cir. 2008) (emphasizing that the "only relevant public interest under Exemption 6 is the extent to which the information sought would shed light on an agency's performance of

---

[82]    Joint Statement ¶¶ 10 & 20.

[83]    *Id.* at ¶ 14.

[84]    Joint Statement ¶ 24; Response 4 (stating that "[b]oth parties agree redactions related to names, phone numbers or descriptions that would allow a reader to determine the identity of a person or a firm, should be withheld").

its statutory duties or otherwise let citizens know what their government is up to")
(internal quotations and brackets omitted). While Lawless asserts that there are millions
of victims involved in the bond fiasco, he does not explain how releasing the internal
telephone numbers or email addresses of those SEC staffers who just so happened to be
forwarded one his emails does anything to advance knowledge about how the SEC
investigated Puerto Rican bond crisis.[85] Nor does Lawless explain how the personal
information of a non-party would serve that end, either. "[I]nformation about private
citizens that is accumulated in various governmental files but that reveals little or nothing
about an agency's own conduct is not the type of information to which FOIA permits
access." *Id.* (quotations omitted). Therefore, the Court concludes that the redactions
are justified as a matter of law under Exemption 6.

Lastly, although Lawless disputes the merits of applying Exemption 7© to a single
email thread,[86] the issue is moot since the Exemption 6 applies.

### 3.    Other Disputes of Material Fact

Scattered through the materials are Lawless's protests that he has not received all
of the documents. Problematically, he offers no proof.[87] *See* Fed. R. Civ. P. 56(c)(1)(A)
(requiring citations to the record). Some of those complaints appear to be stale since the
SEC initially withheld some documents but later released them.[88] With no admissible
evidence to support this narrow alleged dispute of fact, the Court finds it appropriate to
grant partial summary judgment for the SEC. *See* Fed. R. Civ. P. 56(e)(3).

### 4.    Concluding Remarks on the FOIA Requests

The FOIA was designed to create a broad right of access to "official information."
*Reporters Comm. For Freedom of the Press*, 489 U.S. at 772. Whatever it is that motivates
Lawless to seek information from the SEC bears no relevance on his statutory right to
receive the information to which he is entitled. But, as the FOIA makes clear, that right is
not unconditional. Legitimate exemptions exist. *See* 5 U.S.C. § 552(b). Furthermore,
Lawless's right to information pursuant to the FOIA does not guarantee that he will find
what he is looking for. Like many other FOIA plaintiffs who have preceded him, Lawless

---

[85]      *See* Third 22-00016-FOPA Motion 2; *see generally* Second Motion on FOIA Exemptions.

[86]      Joint Statement ¶ 24 (in which Lawless explains that he "does not challenge
Exemption 6," but "believes for good reason that investigations are being fabricated to shield
documents under 7(C)").

[87]      *See, e.g.*, *id.* at ¶¶ 4, 7, 9, 10, 19-21, & 23.

[88]      *See, e.g.*, Second 22-0001-OIGP Motion 3; *see also* Joint Statement ¶¶ 19-22.

must accept that the absence of evidence may not necessarily be further evidence of a coverup—it may just be evidence of absence.

And while Court concludes that the SEC was justified here in its decision to redact or withhold certain documents as a matter of law, that finding does ***not*** mean that the Court regards those decisions as prudent. Moving forward, the Court encourages the SEC to consider whether the decision to redact or withhold information may prove more damaging in terms of eroding trust in our institutions than whatever harm might potentially arise from disclosing the information. Imaginations may run amok when a FOIA recipient excises a responsive document with a black highlighter, even if that document is merely a page from the phonebook.

## VI. CONCLUSION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1.      Lawless's First Motion for Sanctions, Second Motion for Sanctions, Motion to Dismiss Statements, First Motion on FOIA Exemptions, First 22-0001-OIGP Motion, First 22-00015-FOPA Motion, Second 22-00015-FOPA Motion, First 22-00016-FOPA Motion, and Second 22-00016-FOPA Motion are **DENIED as moot**.

2.      Lawless's Third Motion for Sanctions and Amended Motion to Dismiss Statements are **DENIED**.

3.      The SEC's Motion for Partial Summary Judgment is **GRANTED**, and Lawless's FOIA Cross-Motions are **DENIED**. Accordingly, Lawless's FOIA claims as they relate to FOIA Requests No. 22-0001-OIGP, 22-00015-FOPA, and 22-00016-FOPA are **DISMISSED with prejudice**.

4.      The SEC is **DIRECTED** to file a Status Report no later than October 27, 2023, regarding Lawless's FOIA Requests Nos. 21-00159-FOPA and 22-00017-FOPA, concerning progress to date and an estimation time to completion.

**IT IS SO ORDERED.**

Dated:    October 11, 2023

John W. Holcomb
UNITED STATES DISTRICT JUDGE